REQUESTED BY: Henry D. Smith, M.D., M.P.H., Director, Nebraska Department of Health
1. May a sibling, including a minor sibling, authorize the release of the original birth certificate of an adopted person?
2. Whenever a consent form of one biological parent has been filed with the Bureau of Vital Statistics and two parents are listed on the birth certificate, may the entire birth certificate be released?
3. Are the medical histories of the adoptive person, the biological mother, and the biological father to be filed with the Bureau of Vital Statistics at the time that the adoptive birth certificate is filed and the medical records are also given to the adopting parents?
4. By what authority can the Bureau of Vital Statistics release such medical records filed with it? Is a court order necessary?
5. Are the records and original birth certificates of children adopted after independent placement rather than agency placement also governed by the provisions of LB 992?
1. No.
2. No. For exceptions see the discussion below under `Access to Original Birth Certificate of an Adopted Person Allowed by LB 992.'
3. No.
See, answer to Question 3, above. A court order is necessary for the bureau to release information on the original birth certificate to medical practitioners who determine information there may be necessary for the treatment of the health of the adopted person.
Yes.
Access to Original Birth Certificate of an Adopted Personby or on the Authority of a Sibling Pursuant to LB 992
Section 5 defines a `relative' as the biological parents or biological siblings of an adopted person. Section 6 then provides:
 "The Bureau of Vital Statistics shall provide a form which may be signed by a relative indicating the fact that such relative consents to his or her name being released to such relative's adopted person as provided by this act. Such consent shall be effective as of the time of filing the form with the bureau." (Emphasis added.)
Section 7(6) then provides that the form shall include:
 "Authorization that the name, last-known address, and last-known telephone number of the relative and the original birth certificate of the adopted person may be released to the adopted person as provided by this act;. . ." (Emphasis added.)
Given the ambiguity created by the difference between the consent authorized by section 6 and the elements to go on the form prepared by the Bureau of Vital Statistics according to section 7, the legislative history becomes important in determining the legislative intent.
LB 992 is intended to provide a method for adopted persons to conduct a search for their roots, balancing the needs and protecting the rights of adoptive parents, the adopted person and the natural parents. (See, Introducer's Statement of Intent, March 11, 1980). Little time was given to floor debate on the bill because it was a reintroduction of LB 483, passed by the Legislature in the previous session and vetoed by the Governor. He objected to the bill on the ground that it could cause disruptive relationships between adoptive people and their adoptive parents. LB 483 was then amended by adding section 25 to give a veto power to the adoptive parents, a form acceptable to the Governor and reintroduced as LB 992. (See Hearing before the Committee on the Judiciary on March 11, 1980, at 2, 3, and 10 and Floor Debate on LB 992 at 7699, 9938.)
In introducing LB 483 the sponsor had said the bill would allow `the natural mother and fathers or siblings . . . to open up those court cases it they feel the need to find their siblings or parents. . .' (Emphasis added.) He said, `We're talking about a natural mother, natural father or siblings, meaning brothers and sisters if they were split apart.' He said that the person desired to be contacted would be contacted. If that person does not want contact, there will be no `order' to open the adoption records. (See, Hearing before the Committee on the Judiciary on February 7, 1979, at 2-4.) (Under sections 19-24, the Department of Welfare or child placement agency licensed by the Department of Welfare will serve as the intermediary.) In his Statement of Intent, February 5, 1979, the Introducer said the bill allowed `the adopted person' to have access to his/her birth certificate.
An attorney from Legal Aid spoke in favor of the bill:
 ". . . [I]t allows the adopted person, the natural mother, the natural father, the brother or the sister to have access to the court file, but only after the adopted person reaches the age of majority. It allows the original birth certificate of an adopted person to be given to the adopted person only and there again only after that person reaches the age of majority. . . . If does not require the agencies to take any action whatsoever. . . ." (Emphasis added.) Id. at 9.
A man, who had not been adopted himself but whose siblings had, said:
 ". . . Amending this section would make it possible for me to petition the courts to learn the identity of my siblings. . . ." (Emphasis added.) Id. at 16.
An attorney, whose practice includes adoptions, spoke against the bill. She clarified that the court records contained little more than the name of the adopted parents, the natural mother and sometimes the natural father, the age of the natural mother and the fact that the mother worked through an agency. Id. at 37.
 "[This statute] doesn't give the siblings, when they open the records the names of who the other children are or what ages they were or where they were placed. . . .
 ". . . The agency has the records. The county court doesn't really have much. . ." Id. at 40, 41.
We have concluded that the consent of a sibling as provided by section 6 is neither necessary nor sufficient to allow release of the original birth certificate of the adopted person to the adopted person. However, it may facilitate contact between the adopted person and such sibling if desired by the adopted person and not thwarted by the nonconsent of the biological or adoptive parents as discussed below.
Access to Original Birth Certificate of An Adopted Person,Allowed by LB 992
If an adopted person over twenty-five years old files a written request with the bureau for his or her original birth certificate as provided in section 12, a copy of such birth certificate will be released to such person provided:
 (1) A consent form has been signed and filed as provided by section 6 and not revoked as provided by section 8 by both biological parents if known (See, sections 6, 8 and 13), or
 (2) The bureau has information indicating that both biological parents of the adopted person are deceased or, if only one biological parent is known, the bureau has information indicating that such parent is deceased (See, section 17), or
 (3) The bureau has information indicating that one biological parent is deceased and the other biological parent has signed and filed a consent form as provided by section 6, not revoked as provided by section 8. (This follows from (1) and (2), above.)
Notwithstanding the above, no information on the original birth certificate will be released in the following instances except on order of a court of competent jurisdiction:
 (1) A biological parent or parents has filed a notice of nonconsent with the bureau as provided in section 14, not revoked as provided in section 16, and the spouse of such biological parent, who is not also a biological parent of the adopted child to whom the birth certificate pertains, is still living or
 (2) An adoptive parent or parents has filed a notice of nonconsent with the bureau as provided by section 25, not revoked as provided in section 27, and the person signing such nonconsent is still living.
Section 14 could be read as barring release of information on the original birth certificate only between the time the biological parent dies and his or her spouse, who is not also a biological parent, dies. However, this would be inconsistent with the legislative intent that the natural parents as well as the adoptive parents and the adopted person have the veto power over disclosure of information. (See, Floor Debate on LB 483 at 6138, 6130, and 6603 and the Introducers' Statement of Intent for LB 992.)
Section 18 could be read as allowing release of the original birth certificate on the consent only of the biological mother if the child is born out of wedlock, not only when the biological father is unknown but also when the biological father is known, if he or the adoptive parents have not filed non-consents which are still in effect. However, this would be inconsistent with the alternative to consent in section 17 which depends on the death of both biological parents if both are known. It is also inconsistent with the legislative intent discussed above in regard to section 14.
We have concluded that information on the original birth certificate may not be released by the bureau except in the circumstances discussed above or on the order of a court of competent jurisdiction as provided in section71-626.01 as amended in section 31.
Custody of Medical Histories of Adopted Persons as Providedby LB 992
The forms provided by sections 6, 8, 12, 14, 16, 25, 27, 30 shall be filed with the bureau. Section 9 provides that the bureau shall keep the forms provided by sections 6 and 8 `with all other records of an individual adopted person.' Section 28 provides that the bureau shall keep the forms provided by sections 14, 16, 25 and 27 `with all other records of an individual adopted person.' Section 10 provides:
 "The records of an individual adopted person shall include:
(1) A complete medical history of the person;
 (2) A complete medical history of the mother; and
 (3) If available, a complete medical history of the father.
 "Such medical histories shall be provided to the adopting parents upon placement of the person with such parents."
Section 43-113, as amended by section 29 of LB 992 provides:
 "All papers pertaining to the adoption shall be kept by the county judge as a permanent record of the county court and withheld from inspection. No person shall have access to such records except on the order of the county judge of the court in which the decree of adoption was entered on good cause shown or as provided in sections 20 to 22 of this act."
Sections 20 to 22 provide for access to information in the court records regarding the names and locations of the relatives of the `adopted person' which may be given to the Department of Welfare or to a child placement agency licensed by that department.
Section 11 authorized certain health care practitioners to petition a court of competent jurisdiction for the release of information contained on the original birth certificate
which such practitioner has determined may be necessary for the treatment of the health of the adopted person.
We have concluded that sections 9 and 28 do not direct the bureau to keep all the records of the adopted persons; they direct the bureau where to keep the forms referred to in those sections, i.e., with all other records of an individual adopted person which have been filed with the bureau. Those other records include the original birth certificate. They also include the report of adoption and report of amending or setting aside of adoption, if any, as provided by section 30, and the adoptive birth certificate and sometimes a certified copy of the decree of adoption as provided by sections 31 and 32.
We have concluded that medical histories required by section 10 are not to be filed with the bureau but with the court where the decree of adoption is issued.
Application of LB 992 to Independent Placements of Childrenfor Adoption
The wisdom of continuing to allow independent placements of children for adoption and possible limitations on such placements were discussed by the Legislature during its debate of LB 483. However, the bill as enacted did not change the prior law in that regard. No section in it distinguishes between the record and original birth certificates of a child placed through an agency and a child placed by the parent. As one senator pointed out, `. . . [A]n adoption still has to be approved by the county court. In addition, the Nebraska Department of Welfare still has to do a home investigation of the prospective adoptive parents.' (See, Legislative History of LB 483 at 6145.)
Section 71-626 was amended by section 30 to require that the report of adoption include `the name and address of the child placement agency, if any, which placed the child for adoption.' (Emphasis added.)
We have concluded that the records and original birth certificates of children independently placed for adoption are governed by the provisions of LB 992.